No. DA 06-0386

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 169

_____

JOHN P. STOKES, individually, and SKYLINE
BROADCASTER, INC., a Montana corporation,
and Z-600, INC., a Montana corporation,

        Plaintiffs and Appellants,

    v.

THE STATE OF MONTANA acting by and through
the Montana Department of Transportation, and
SUSAN J. REBECK, an agent and employee of the
State of Montana, and JOHN DOES 1 THROUGH 10,

        Defendants and Respondents.

_____

APPEAL FROM:    District Court of the First Judicial District,
                In and for the County of Lewis and Clark, Cause No. CDV-2004-320,
                The Honorable Thomas C. Honzel, Presiding Judge.

COUNSEL OF RECORD:

        For Appellants:

                Wade J. Dahood, Knight, Dahood, Everett & Sievers, Anaconda, Montana

        For Respondents:

                Mikel L. Moore, Christensen, Moore, Cockrell, Cummings & Axelberg,
                P.C., Kalispell, Montana

_____

                Submitted on Briefs:  February 28, 2007
                          Decided:  July 12, 2007

Filed:

_____
                    Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     John P. Stokes, Skyline Broadcaster, Inc., and Z-600, Inc. (collectively Stokes) appeal from the order of the First Judicial District Court, Lewis and Clark County, granting the State of Montana's (State) cross-motion for summary judgment on Stokes's claim for tortious interference with his easement.  We affirm.

¶2     We review whether the District Court correctly granted the State's motion for summary judgment based on its determination that Stokes had failed to present a *prima facie* case of tortious interference with his easement?

## FACTUAL AND PROCEDURAL HISTORY

¶3     Stokes owns and operates a small radio station just off U.S. Highway 93, south of Kalispell.  Stokes holds an easement across a part of Douglas Anderson's (Anderson) adjoining property.  A portion of Stokes's radio facility sits on Anderson's land. Anderson's predecessor in interest granted the easement for the radio facility to the Stokes's predecessor in interest in 1949.  Neither Stokes nor any of his predecessors in interest have expanded the radio facility beyond its original location on Anderson's land. The present dispute relates to a separate dispute between Stokes and Anderson regarding the scope of Stokes's easement.  Its resolution in Anderson's favor was the subject of our decision in *Anderson v. Stokes*, 2007 MT 166, ___ Mont. ___, ___ P.3d ___.

¶4     The State determined that it needed to obtain a right-of-way over a portion of Anderson's property near U.S. Highway 93 as part of a highway improvement project. Susan J. Rebeck (Rebeck), acting on behalf of the State, contacted Anderson to inform him that some ambiguity existed regarding whether Stokes's easement encumbered the

2

property sought by the State. This ambiguity gave rise to two separate appraisals of the State's proposed right-of-way over Anderson's property. Rebeck explained that the State would pay Anderson $2,056.00 for the right-of-way if Stokes's easement encumbered it based on its value for agricultural purposes. On the other hand, Rebeck explained that the State would pay Anderson $78,800.00 if Stokes's easement did not encumber it based on its value for potential commercial development. Rebeck advised Anderson to consult a lawyer in order to determine whether Stokes's easement encumbered the State's proposed right-of-way.

¶5 Anderson retained a lawyer and filed an action on January 12, 2001, in the Eleventh Judicial District Court, Flathead County, asking the court either to extinguish Stokes's easement or, alternatively, to declare that the scope of the easement always had been limited to its historic location. Anderson and the State entered an agreement on January 23, 2001, where the State stipulated that it would pay Anderson $2,056.00 for the right-of-way, but would pay Anderson an additional sum of $76,744.00 if he could show that Stokes's easement did not encumber the right-of-way. The court in the Flathead County action entered an order on October 29, 2002, declaring that the scope of Stokes's easement always had been limited to its historic location. We affirmed. *Anderson*, ¶ 60.

¶6 Stokes filed a complaint in the First Judicial District Court, Lewis and Clark County, on April, 22 2004, claiming that Rebeck tortiously had interfered with his easement rights. Stokes alleged that Rebeck unlawfully had induced Anderson to file a complaint that had resulted in a court order limiting the scope of Stokes's easement and causing him damages. The parties filed cross-motions for summary judgment. The

3

District Court denied Stokes's motion for summary judgment and granted the State's motion for cross-summary judgment as to Stokes's claim for tortious interference with his easement rights. Stokes appeals.

**STANDARD OF REVIEW**

¶7 We review a district court's decision to grant summary judgment *de novo*, using the same criteria applied by the district court under M. R. Civ. P. 56. *GRB Farm v. Christman Ranch, Inc.*, 2005 MT 59, ¶ 7, 326 Mont. 236, ¶ 7, 108 P.3d 507, ¶ 7. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M. R. Civ. P. 56(c). We draw all reasonable inferences in favor of the party opposing summary judgment. *Watkins Trust v. Lacosta*, 2004 MT 144, ¶ 16, 321 Mont. 432, ¶ 16, 92 P.3d 620, ¶ 16.

**DISCUSSION**

¶8 *Did the District Court correctly grant the State's motion for summary judgment based on its determination that Stokes had failed to present a prima facie case of tortious interference with his easement?*

¶9 Stokes alleges that Rebeck interfered with his easement when Rebeck induced Anderson to file a lawsuit seeking either to extinguish Stokes's easement or, alternatively, to limit Stokes's easement to its historic location. Stokes claims first that the court's order limiting his easement to its historic location destroyed his "plans for future expansion." Stokes admits that Rebeck has not interfered with Stokes's historic

4

use of his easement. He argues, however, that his easement would have permitted him to expand his radio facility beyond its historic location to anywhere on Anderson's property.

¶10 Stokes must establish that Rebeck's alleged acts actually caused some interference with his existing easement rights. *Grenfell v. Anderson*, 2002 MT 225, ¶ 75, 311 Mont. 385, ¶ 75, 56 P.3d 326, ¶ 75; *Lachenmaier v. First Bank Systems, Inc.*, 246 Mont. 26, 34-35, 803 P.2d 619 (1990); Restatement (Second) of Torts § 766 (1979). In *Grenfell*, for example, we rejected the plaintiff's claim that Grenfell tortiously had interfered with the plaintiff's sublease in light of the fact that the plaintiff's sublease had been terminated by the time that Grenfell allegedly interfered with the sublease. *Grenfell*, ¶ 66. Grenfell could not tortiously have interfered with a property right that did not exist. *Grenfell*, ¶ 75; *see also Germann v. Stephens*, 2006 MT 130, ¶ 26, 332 Mont. 303, ¶ 26, 137 P.3d 545, ¶ 26 (holding that a party must establish that it possesses a protected liberty or property interest to establish a viable § 1983 claim).

¶11 Stokes similarly alleges that Rebeck tortiously interfered with a property right that did not exist. This Court determined that Stokes had no easement rights—and never had any easement rights—beyond the historic location of his radio facility. *Anderson*, ¶ 60. Stokes offers no evidence to the contrary. Stokes thus presents an illusory claim of tortious interference with his right to expand his radio facility as Stokes's easement never permitted such an expansion in the first place.

¶12 Stokes claims alternatively that Rebeck induced Anderson's failed attempt to extinguish Stokes's easement. He claims damages from emotional distress and attorneys fees in defending the extinguishment suit. The State responds that Stokes has failed to

offer any facts suggesting that Rebeck's acts were "improper" as required by our decision in *Bolz v. Myers*, 200 Mont. 286, 651 P.2d 606 (1982).

¶13 We held in *Bolz* that a plaintiff must show that the defendant's acts were "improper" in order to establish a claim for tortious interference with contractual relations. *Bolz*, 200 Mont. at 294-95, 651 P.2d at 610. We consider the following factors when determining whether a party's acts were improper: (a) the nature of the actors conduct; (b) the actor's motive; (c) the interests of the other with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties. *Bolz*, 200 Mont. at 294-95, 651 P.2d at 610.

¶14 The record shows that the State, acting through Rebeck, agreed to pay Anderson more money for the right of way if he could show that Stokes's easement did not encumber the State's proposed right-of-way. Stokes points to nothing that the State had to gain from paying more to Anderson for the right-of-way. Rebeck advised Anderson to consult an attorney regarding whether Stokes's easement encumbered the State's proposed right-of-way. Rebeck's suggestion to Anderson that he should consult a lawyer, however, relates only remotely to Anderson's ultimate decision to file an action to extinguish the easement. The record does not indicate that Rebeck encouraged Anderson to file a lawsuit.

¶15 We agree with the District Court that it "certainly would not be improper, let alone unlawful, for an attorney in Rebeck's position to tell a landowner whose property is

6

subject to being acquired by condemnation that he should consult with an attorney . . . ." Rebeck's actions comported with a lawyer's ethical duty to advise a third party to "secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client." Montana Rule of Professional Conduct 4.3. Likewise, Rebeck did not act improperly when she offered, on behalf of the State, to pay Anderson more money for a right-of-way that he could show was free and clear of any easements. Stokes has failed to allege any facts establishing that Rebeck acted improperly, thus, we need not address the remaining elements of his claim for tortious interference with his easement. *Bolz*, 200 Mont. at 294-95, 651 P.2d at 610.

¶16    We conclude that the State is entitled to summary judgment as no genuine issue of material fact exists with regard to whether the State tortiously interfered with Stokes's easement. *GRB* Farm, ¶ 7. The District Court correctly determined as a matter of law that Stokes has failed to establish a *prima facie* case of tortious interference with his easement.

¶17    Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ JAMES C. NELSON

7